# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case Number 4:19-cr-237-ALM-KPJ(1) |
| | § | Judge Mazzant |
| TAYLOR JUSTIN GATES | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Suppress (Dkt. #36) and Defendant's Motion for a *Franks vs. Delaware* Hearing (Dkt. #37). Having considered the motions and the relevant pleadings, the Court finds that the motions should be **DENIED**.

## BACKGROUND

On September 11, 2019, a grand jury indicted Taylor Justin Gates ("Gates") on one count of possession of a firearm not registered in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d) (Dkt. #1 at pp. 1-2). The grand jury also charged Gates with one count of possession of a firearm while an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3) (Dkt. #1 at pp. 1-2). Police found the firearm and controlled substance during a search of 916 Rutgers Court, in Allen, Texas ("Gates residence") (Dkt. #38 at pp. 4-5). Allen Police Department Narcotics Investigator Joshua Hunt ("Hunt") drafted the warrant that supported the search (Dkt. #40 at p. 2).

On June 8, 2018, the Allen Police Department ("Police") received an anonymous tip about Gates' residence (Dkt. #36 ¶ 1). The caller informed Police that Gates recently moved into the neighborhood and numerous cars visited his residence (Dkt. #36 ¶ 1). Police began to monitor Gates' residence and, on June 13, 2018, conducted a "trash pull" (Dkt. #36 ¶ 1). Police found "two

vacuum package type baggies with marijuana residue and Raw brand rolling paper wrapper" (Dkt. #40 at p. 2).

On June 19, 2020, police received another anonymous tip (Dkt. #40 at p. 3). The caller informed police of numerous vehicles visiting Gates' residence (Dkt. #40 at p. 3). Later, on June 20, 2018, police responded to a welfare check for a car that was parked in front of Gates' residence (Dkt. #40 at p. 3). Police found a heavily intoxicated man, who possessed a small amount of marijuana, in the vehicle (Dkt. #40 at pp. 3-4). Then, on June 27, 2018, Police conducted a second "trash pull" (Dkt. #40 at p. 4). Police found cut off tops from 13 vacuum sealed bags with marijuana residue and a receipt that showed a purchase of two rolling trays, a grinder, a pocket scale, and Exxus brand vaporizer. (Dkt. #40 at p. 4).

Following these events, Hunt drafted an affidavit for a search warrant detailing evidence gathered from police from June 13, 2018, to June 27, 2018 (Dkt. #40 at p. 2). On June 29, 2018, police executed a search warrant for Gates' residence and seized evidence that was then used to charge Gates (Dkt. #40 at p. 4).

On April 29, 2021, Gates filed two motions. First, Gates moves to suppress the evidence police found at his residence (Dkt. #36). Gates argues that the warrant supporting the search lacked probable cause and the good-faith exclusionary rule should not apply (Dkt. #36). Second, Gates moves for a *Franks* hearing, claiming that 1) the affidavit in support of the search warrant contained material misrepresentations/material omission and 2) there was no probable cause to search Gates' residence (Dkt. #37 at p. 4).

The purported omission involves the welfare check the Police conducted when they found an intoxicated man who possessed marijuana in front of Gates' residence (Dkt. #37 at p. 21). Gates contends that omitting that the 9-1-1 caller was Jacki Gallus ("Gallus"), a person who lived at the

Gates' residence, is a material omission. Gates argues that the omission takes a factor weighing against finding probable cause and turns it into a factor that is intended to support probable cause (Dkt. #37 at ¶ 10).

The Government disagrees and responded to Gates' Motion to Suppress on May 12, 2021, and Gates' Motion for a *Franks* hearing May 13, 2020 (Dkt. #38; Dkt. #40). On May 19, 2021, Gates replied to the motion to suppress (Dkt. #44). On June 18, 2021, Gates replied to the motion for a *Franks* hearing (Dkt. #52).

**LEGAL STANDARD**

### I. Motion to Suppress

A valid search warrant may be issued only upon a finding of probable cause. *United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir. 1991). The information necessary to show probable cause must be contained within a written affidavit given under oath. *Id.* Probable cause does not require proof beyond a reasonable doubt; a judge need only have a substantial basis for concluding a search would uncover evidence of wrongdoing. *Id.* Whether probable cause exists requires a practical, common-sense determination of whether the circumstances establish a fair probability contraband or evidence of a crime will be found in a particular place. *United States v. Steele.* 353 Fed. Appx. 908 (5th Cir. 2009).

When reviewing a motion to suppress, courts apply a two-step test. *See United States v. Sibley*, 448 F.3d 754, 757 (5th Cir. 2006). In the first step, courts determine whether the good-faith exception to the exclusionary rule applies. *Id.*; *see also United States v. Leon*, 468 U.S. 897, 920 (1984). Under the good faith exception, where probable cause for a search warrant is based on incorrect information, the evidence will not be excluded if "the officer's reliance upon the information's truth was objectively reasonable." *Id.* (quoting *United States v. Cavazos*, 288 F.3d

706, 709 (5th Cir. 2002)). Because a warrant is normally issued by a magistrate, issuance alone "normally suffices to establish good faith on the part of law enforcement officers." *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988). When the good-faith exception applies, the motion to suppress may be denied without any further inquiry. *See United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999). If the good-faith exception does not apply, courts then look to whether there was a substantial basis for the magistrate's determination that probable cause existed. *Id.* at 407.

The good-faith exception does not apply if: (1) the affiant recklessly disregarded the truth or knowingly misled the issuing judge with false information; (2) the issuing judge wholly abandoned their judicial role; (3) the warrant is based on an affidavit that lacks an indicia of probable cause so as to render belief in it unreasonable; and (4) the warrant is so facially deficient in failing to particularize the place to searched or things to be seized. *United States v. Payne*, 341 F.3d 393, 399–400 (5th Cir. 2003). When deciding whether the exception applies, "all of the circumstances surrounding the issuance of the warrant] may be considered." *Payne*, 341 F.3d at 400 (citing *Leon*, 468 U.S. at 922 n. 23). When challenging application of the good faith exception, the defendant carries the burden to prove by a preponderance of the evidence that it does not apply. *United States v. Rosa*, 721 Fed. App'x 403 (5th Cir. 2018).

**II.** *Franks* **Hearing**

A *Franks* hearing "is a hearing to determine whether a police officer's affidavit used to obtain a search warrant was based on false statements by the police officer." *United States v. Richardson*, 478 F. App'x 82, 83 n.1 (5th Cir. 2012) (citation omitted). A defendant is only entitled to a *Franks* hearing if they show: (1) the supporting affidavit contains false statements or material omissions; (2) the false statements or omissions were deliberate or were made with a reckless disregard for the truth; and (3) the false statements or omissions are so material that, once they are

excised, the remainder of the affidavit is insufficient to support a finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155 (1978); *see United States v. Kendrick*, 980 F.3d 432, 440 (5th Cir. 2020) (citing *United States v. Ortega*, 854 F.3d 818, 826 (5th Cir. 2017)). The Fifth Circuit applies *Franks* not just to material allegations, but also to material omissions. *See Kendrick*, 980 F.3d at 440.

Even if a defendant satisfies the first two prongs of the test, they are not entitled to a *Franks* hearing if, when the falsehood is set aside, "there remains sufficient content in the warrant affidavit to support a finding of probable cause." *United States v. Dickey*, 102 F.3d 157, 161–62; *see also United States v. Privette*, 947 F.2d 1259, 1261 (5th Cir. 1991). Only if the false statements are "necessary to the finding of probable cause," does the Fourth Amendment require a hearing. *Franks*, 438 U.S. at 156. Under *Franks*, there is a "presumption of validity with respect to the affidavit supporting the search warrant" and a defendant must make a "substantial showing" in proving the evidence should be suppressed. *Id.*

## ANALYSIS

The Court denies Gates' motion to suppress and motion for a *Franks* hearing. First, Gates fails to carry his burden of proving that the good-faith exception does not apply to the search. Second, Gates fails to carry his burden of proving that the affidavit for the search warrant contains a material omission and is therefore not entitled to a *Franks* hearing.

I. **Motion to Suppress**

The Court finds that the good-faith exception applies. Issuance by a magistrate "normally suffices to establish good faith on the part of law enforcement officers." *Craig*, 861 F.2d at 821. In this case, on June 27, 2018, Hunt submitted an affidavit for a search warrant (Dkt. #36 at p. 29). The affidavit carefully detailed the investigation police conducted from June 13, 2018, to June 27,

2018 (Dkt. #40 at p. 2). It contained evidence from the trash pulls, such as "baggies with marijuana residue" and "a receipt that showed a purchase of two rolling trays, a grinder, a pocket scale" (Dkt. #40 at pp. 2-4). The affidavit also contained information about anonymous tips describing numerous vehicles frequenting Gates' residence (Dkt. #36 ¶ 1). On June 28, 2018, after reviewing the affidavit, Collin County Magistrate Judge Dan K. Wilson signed a search warrant for Gates' residence (Dkt. #36 at p. 30). Relying upon the search warrant, Police executed it on June 29, 2018 (Dkt. #40 at p. 4). These events suggest that the officers acted in good faith because the "officer's reliance upon the information's truth was objectively reasonable," given that Judge Wilson had reviewed the detailed affidavit and signed the warrant authorizing the search. *Cavazos*, 288 F.3d at 709. Thus, the Court finds that the good-faith exception applies.

Gates now carries the burden of proving by a preponderance of the evidence that the good-faith exception should not apply. *United States v. Cavazos*, 288 F.3d 706, 709 (5th Cir. 2002). Gates argues that the good-faith exception should not apply because (1) the issuing magistrate was misled by an affiant who knowingly, or with reckless disregard for the truth, provided the affidavit on which the magistrate relied; (2) the magistrate wholly abandoned his judicial role and acted as part of the law enforcement team; and, (3) the law enforcement officer relied on a warrant based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable (Dkt. #36 ¶ 9). The Court finds that Gates cannot carry his burden and addresses each argument in turn.

### A. Knowingly or with Reckless Disregard for the Truth

The Court finds that Hunt did not "knowingly or recklessly disregard the truth" when he omitted Gallus' identity from the affidavit for search warrant. *United States v. Cherna*, 184 F.3d 403, 407-08 (5th Cir. 1999). Gates must prove by a preponderance of the evidence that Hunt

knowingly misled the magistrate. *Cavazos*, 288 F.3d 710. Gates contends that Hunt intended to mislead the magistrate by omitting that Gallus called police to conduct the welfare check. However, Hunt's sworn testimony proves the opposite (*See* Dkt. #37 at pp. 45-46). On July 16, 2020, Hunt testified in a state court hearing that he "did not intentionally leave out [Gallus' identity]" when he drafted the affidavit for the search warrant (Dkt. #37 at p. 45). Hunt further stated that he never knew that Gallus called police to report the idling vehicle (Dkt. #37 at p. 46). Despite this testimony, Gates argues that Hunt "was aware that Gallus lived with Gates" and that Gallus [was] the person who called 9-1-1 (Dkt. #37 ¶ 33). However, Gates does not provide evidence to counter Hunt's sworn testimony (*See* Dkt. #36 pp. 16-20). As such, the Court finds that Gates does not carry his burden of proving by a preponderance of the evidence that the Hunt knowingly mislead the magistrate.

Furthermore, the Court finds that Hunt's omission does not constitute "reckless disregard for the truth." *Id*. Gates argues that Hunt "was aware that Gallus lived with Gates" and that Gallus [was] the person who called 9-1-1 (Dkt. #37 ¶ 33). However, Gates does not substantiate this claim with evidence because Gates does not explain how Hunt would know Gallus' identity when drafting the affidavit (*See* Dkt. #36 pp. 16-20). Thus, the Court finds that Gates cannot carry his burden of proving by a preponderance of the evidence that Hunt recklessly disregarded the truth and misled the magistrate.

### B. Abandonment of Judicial Role

The Court also finds that the issuing magistrate did not "wholly abandon his judicial role and acted as part of the law enforcement team." *Cherna*, 184 F.3d at 407-08. Gates argues that the issuing magistrate abandoned his judicial role and acted as part of the law enforcement team (Dkt. #36 ¶ 27). In *Lo-Ji Sales*, a Town Justice viewed an obscene film an investigator purchased from

a store. *Lo-Ji Sales v. New York*, 442 U.S. 319, 322-23 (1979). The Town Justice then issued a search warrant based on probable cause and traveled to the store with police officers. *Id*. Then, the Town Justice viewed more potentially obscene material and ordered police to seize any material the Town Justice deemed obscene. *Id*. The Supreme Court stated that the Town Justice's actions constituted an abandonment of the judicial role. *Id*. In the Gates' case, the magistrate did not take any such action. Instead, the issuing magistrate reviewed the search warrant, signed it, and police later executed the warrant (Dkt. #38). Gates does not identify how the magistrate abandoned his judicial role and acted as a part of the law enforcement team (*See* Dkt. #36 at pp. 16-20). Gates also does not argue that the issuing magistrate was present when policed seized evidence at Gates' residence (*See* Dkt. #36). Thus, the Court finds that Gates does not carry his burden of proving that the magistrate abandoned his judicial role and acted as a part of the law enforcement team.

   C. **Affidavit Lacking in Indicia of Probable Cause**

Lastly, the Court finds that the police did not "rely on a warrant based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable." *Cherna*, 184 F.3d at 409. Normally, an "officer may rely in good faith on the validity of a warrant so long as the warrant is supported by more than a bare bones affidavit." *Cherna*, 184 F.3d at 409 (quoting *United States v. Cisneros*, 112 F.3d 1272, 1278 (5th Cir. 1997)). Here, the Court finds that the affidavit contained sufficient evidence of probable cause so as to not "render belief in its existence entirely unreasonable." *Cherna*, 184 F.3d at 409. As stated above, the affidavit carefully detailed the investigation police conducted from June 13, 2018, to June 27, 2018 (Dkt. #40 at p. 2). It contained evidence from the trash pulls, such as "baggies with marijuana residue" and "a receipt that showed a purchase of two rolling trays, a grinder, a pocket scale" (Dkt. #40 at pp. 2-4). The affidavit also contained information about anonymous tips describing numerous vehicles

frequenting Gates' residence (Dkt. #36 ¶ 1). This information made the document more than a bare bones affidavit and established a nexus between Gates' residence and the evidence found in the trash. *See Payne*, 341 F.3d at 400 (finding that "facts in the affidavit must establish a nexus between the house to be searched and the evidence sought."). The affidavit contained ample information to support that there was a "fair probability that contraband or evidence of a crime" would be found in Gates' residence. *United States v. Newman*, 472 F.3d 233, 237 (5th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Thus, the Court finds Gates does not carry his burden of proving that that the police unreasonably relied "on a warrant based on an affidavit so lacking in indicia of probable cause." *Cherna*, 184 F.3d at 409.

Ultimately, the Court finds that Gates did not meet his burden of proving by a preponderance of the evidence that the good-faith exception does not apply.

**II.    *Franks* Hearing**

Next, the Court addresses the omission Gates argues merits a *Franks* hearing. The Court finds that Gates does not carry his burden in making a substantial showing that the supporting affidavit contained a material omission.

To be entitled to a *Franks* hearing, Gates must first prove that the supporting affidavit contained false statements or material omissions. *See United States v. Kendrick*, 980 F.3d 432, 440 (5th Cir. 2020) (citing *United States v. Ortega*, 854 F.3d 818, 826 (5th Cir. 2017)). To prove an omission is material, Gates must make "a strong preliminary showing that the affiant excluded critical information from the affidavit with the intent to mislead the magistrate." *United States v. Tomblin*, 46 F.3d 1369, 1377 (5th Cir. 1995) (citing *United States v. Colkley*, 899 F.2d 297, 303 (4th Cir. 1990)). However, "omitted information that is potentially relevant but not dispositive is

not enough to warrant a *Franks* hearing." *Tomblin*, 46 F.3d at 1377 (citing *Colkley*, 899 F.2d at 303).

Here, the Court finds that the omission is not material because Gates does not make a "strong preliminary showing" that the omission was made with "the intent to mislead the magistrate." *Id*. Gates argues that by omitting Gallus lived at Gates' residence the police took a factor that weighted against finding probable cause and turned it into a factor intended to support probable cause (Dkt. #37 ¶ 10). Gates contends that a "person involved in criminal activity would not call the police to his or her own home," and therefore, Hunt intended to mislead the magistrate by omitting Gallus' identity (Dkt. #37 ¶ 10). Gates' argument is unpersuasive. First, Hunt testified in a state court hearing that he "did not intentionally leave out [Gallus' identity]" (Dkt. #37 at p. 45). Hunt further testified that he never had knowledge of the 9-1-1 caller's identity (Dkt. #37 at 46). Both statements indicate that Hunt did not "inten[d] to mislead the magistrate" by omitting Gallus' identity as the 9-1-1 caller because he did not know the caller's identity when he drafted the affidavit. *Tomblin*, 46 F.3d at 1377 (citing *Colkley*, 899 F.2d at 303). As such, the Court finds that Gates does not make a "strong preliminary showing" that the omission was made with "the intent to mislead the magistrate." *Id*.

Moreover, the Court finds that the omission is not material because the identity of the caller is not "critical information." *Tomblin*, 46 F.3d at 1377 (citing *Colkley*, 899 F.2d at 303). In this instance, police found a heavily intoxicated man that possessed a small amount of marijuana in front of Gates' residence (Dkt. #40 at pp. 3-4). When officers found this man, police were also conducting an ongoing investigation into Gates' residence as a possible location that trafficked large amounts of marijuana (Dkt. #40 at pp. 2-4). As such, Gallus' identity as the 9-1-1 caller would have provided helpful context to the incident because she lived at Gates' residence.

However, the fact remains that a man possessing marijuana was found in front of a house that police suspected of trafficking large amounts of marijuana. Although Gallus' identity as the caller may have been helpful to the magistrate reviewing the affidavit for the search warrant, the information is not "critical." *Tomblin*, 46 F.3d at 1377 (citing *Colkley*, 899 F.2d at 303). Rather, Gallus' identity is "potentially relevant but not dispositive" since a man with marijuana was found in front of a location that, police allege, likely supplied him with the illegal substance. *Id;* (Dkt. #37 at p. 21). For this reason, the Court finds that Gates does not make a "strong preliminary showing" that Hunt omitted the information "to mislead the magistrate." *Tomblin*, 46 F.3d at 1377 (citing *Colkley*, 899 F.2d at 303).

Thus, the Court finds that Gates does not meet his burden of proving that the affidavit contained a material omission. The Court does not proceed to the second or third inquiry because Gates did not meet his initial burden and is therefore not entitled to a *Franks* hearing.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Suppress (Dkt. #36) and Defendant's Motion for a *Franks vs. Delaware* Hearing (Dkt. #37) are hereby **DENIED**.

**SIGNED this 16th day of July, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE